**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:26-cv-00824-STV

COMCAST BUSINESS COMMUNICATIONS, LLC,

Plaintiff,

v.

DISH WIRELESS L.L.C. and ECHOSTAR CORPORATION,

Defendants.

---

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS' MOTION TO STAY PROCEEDINGS (Dkt. No. 25, 03/20/26)**

---

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 3

I. DEFENDANTS SEEK TO EVADE DISH'S OBLIGATIONS ..... 3

II. PROCEDURAL BACKGROUND ..... 5

ARGUMENT ..... 5

I. DEFENDANTS FACE A DIFFICULT BURDEN ..... 6

II. DEFENDANTS HAVE NOT MET THEIR DIFFICULT BURDEN TO SHOW A STAY IS WARRANTED ..... 7

A. A Stay Would Prejudice Plaintiff ..... 7

B. Defendants Have Not Shown They Will Face Hardship Or Inequity ..... 10

C. Defendants Have Not Demonstrated A Stay Will Conserve Judicial Resources ..... 13

D. To The Extent Relevant, Other Factors Do Not Support A Stay ..... 15

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adams v. Bristol-Meyers Squibb Co.*,
No. 16-cv-01674, 2016 WL 4257595 (D. Colo. July 18, 2016) .......... 6

*Aircomm of Avon, LLC v. DISH Wireless L.L.C.*,
No. 25-cv-03756 (D. Colo. Jan. 30, 2026) .......... 12

*Am. Towers LLC v. DISH Wireless, L.L.C.*,
No. 25-cv-03311 (D. Colo. Oct. 20, 2026) .......... 12

*Baldwin v. United States*,
No. 11-cv-02033, 2011 WL 5177698 (D. Colo. Nov. 1, 2011) .......... 1, 11

*Barrington v. United Airlines, Inc.*,
565 F. Supp. 3d 1213 (D. Colo. 2021) .......... 5

*Blackmore v. Smitty's Supply, Inc.*,
451 F. Supp. 3d 1003 (N.D. Iowa 2020) .......... 7

*Bos. Taxi Owners Ass'n, Inc. v. City of Bos.*,
187 F. Supp. 3d 339 (D. Mass. 2016) .......... 8

*Bunnell Bunnell v. Future Motion, Inc.*,
No. 22-cv-01220, 2023 WL 7279354 (D. Colo. Nov. 3, 2023) .......... 7, 10

*Carolus v. Gen. Elec. Co.*,
No. 07-cv-00714, 2007 WL 4225802 (D. Colo. Nov. 28, 2007) .......... 5, 7

*Certain Underwriters at Lloyds, London v. Hartford Accident & Indem. Co.*,
No. 18-cv-01896, 2021 WL 5810712 (D. Colo. Dec. 6, 2021) .......... 2, 11, 14

*Cheney v. Eli Lily & Co.*,
No. 14-cv-02249, 2014 WL 7010656 (D. Colo. Dec. 9, 2014) .......... 6

*Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*,
713 F.2d 1477 (10th Cir. 1983) .......... 6

*Council v. Target Corp.*,
No. 13-cv-03479, 2014 WL 859326 (D. Colo. Mar. 5, 2014) .......... 7, 9

*Cuesta v. SMT Holdings LLC*,
No. 21-cv-03094, 2022 WL 15516990 (D. Colo. Oct. 27, 2022) .......... 8

*DataVerge LLC v. DISH Wireless L.L.C.*,
No. 26-cv-01168 (E.D.N.Y. Feb. 27, 2026) .......... 12

*Deutsche Bank Tr. Co. Am. v. Fushimi*,
No. 11-cv-02472, 2011 WL 5864987 (D. Colo. Nov. 22, 2011) .......... 7

*Duggins v. Hunt*,
323 F.2d 746 (10th Cir. 1963) .......... 8

*FDIC v. Countrywide Fin. Corp.*,
No. 11-cv-02268, 2011 WL 4372915 (D. Colo. Sept. 19, 2011) .......... 7

*Fontenot v. NCAA*,
No. 23-cv-03076, 2024 WL 6990724 (D. Colo. Feb. 21, 2024) .......... 7, 9

*Four Winds Interactive LLC v. 22 Miles, Inc.*,
No. 16-cv-00704, 2017 WL 121624 (D. Colo. Jan. 11, 2017) .......... 5

*Garrison v. Stephan*,
No. 23-cv-01138, 2023 WL 5207624 (D. Nev. Aug. 11, 2023) .......... 7, 11

*Green v. Padilla*,
697 F. Supp. 3d 1115 (D.N.M. 2023) .......... 1, 6

*Harris v. Startek USA, Inc.*,
No. 22-cv-00437, 2022 WL 2068990 (D. Colo. May 11, 2022) .......... 1

*Hooper v. City of Tulsa*,
71 F.4th 1270 (10th Cir. 2023) .......... 8

*In re: DISH Wireless L.L.C. Commc'n Towers Cont. Litig.*,
No. 3182 (J.P.M.L. 2026) .......... 5

*Jozwiak v. Stryker Corp.*,
No. 09-cv-1985, 2010 WL 147143 (M.D. Fla. Jan. 11, 2010) .......... 8, 9, 11

*Kel Kim Corp. v. Cent. Markets, Inc.*,
70 N.Y.2d 900 (1987) .......... 12, 13

*Linde v. Envision Healthcare Corp.*,
No. 20-cv-2661, 2022 WL 1154625 (D. Kan. Apr. 19, 2022) .......... 13

*Lundy v. C.B. Fleet Co.*, Inc., No. 09-cv-00802, 2009 WL 1965521, at *1 (D. Colo. July 6, 2009)....................6

*Masciotra v. Vertafore, Inc.*, No. 20-cv-03603, 2021 WL 3887949 (D. Colo. Feb. 3, 2021)....................6, 9

*McGinn v. El Paso Cnty.*, 640 F. Supp. 3d 1070 (D. Colo. 2022)....................2, 14

*Myers v. City of Loveland*, No. 12-cv-02317, 2012 WL 5364219 (D. Colo. Oct. 31, 2012)....................15

*PPF Safeguard, LLC v. BCR Safeguard Holding, LLC*, 85 A.D.3d 506 (2011)....................13

*Ratcliff v. Brown*, No. 23-cv-00605, 2023 WL 6314566 (D. Colo. Sept. 28, 2023)....................6, 9

*Royal Grp. Plaza, LLC v. DISH Wireless L.L.C.*, No. 26-cv-01092 (C.D. Cal. Feb. 3, 2026)....................12

*Sabre Indus, Inc. v. DISH Wireless Leasing L.L.C.*, No. 26-cv-00209 (S.D.N.Y. Jan. 12, 2026)....................12

*Seidner Props., LP v. DISH Wireless L.L.C.*, No. 26-cv-00082 (C.D. Cal. Jan. 9, 2026)....................12

*Simental v. State Auto. Mut. Ins. Co.*, No. 21-cv-01725, 2021 WL 4947285 (D. Colo. Aug. 18, 2021)....................11

*Stone v. Vail Resorts Dev. Co.*, No. 09-cv-02081, 2010 WL 148278 (D. Colo. Jan. 7, 2010)....................6, 9, 10

*Sykes v. LivaNova Deutschland GmbH*, No. 17-cv-02437, 2018 WL 286791 (D. Colo. Jan. 4, 2018)....................6

*United States for Daro Tech, Ltd. v. Centerre Gov't Contracting Grp., LLC*, No. 13-cv-01811, 2014 WL 1215565 (D. Colo. March 24, 2014)....................14

*Wells v. Dish Network, LLC*, No. 11-cv-00269, 2011 WL 2516390 (D. Colo. June 22, 2011)....................15

*Zornes v. Smitty's Supply, Inc.*, No. 19-cv-2257, 2020 WL 1285386 (D. Kan. Mar. 18, 2020)....................7, 14

**RULES**

D.C.COLO.LCivR 26 ....................................................................................................11

## INTRODUCTION

Defendants' motion to stay this proceeding should be denied. Pointing to their pending motion for transfer and consolidation before the Judicial Panel on Multidistrict Litigation ("JPML") that seeks to transfer eight actions, Defendants assert that a stay is warranted to prevent inconsistent rulings and to avoid purportedly duplicative discovery. Dkt. No. 25 at 4. But the party seeking a stay bears a "difficult burden," contrary to Defendants' suggestion that a different standard applies. *See infra* at 6. And Defendants have not met that "difficult burden" here given that prejudice to Plaintiff outweighs any purported hardship to Defendants and proceeding on the current schedule would preserve rather than waste judicial resources. *Green v. Padilla*, 697 F. Supp. 3d 1115, 1177 (D.N.M. 2023).

Defendants' broad stay request ignores that Defendants' unlawful action is *ongoing* and that Plaintiff suffers additional harm with each passing day. Defendants do not dispute that Defendant DISH Wireless L.L.C. ("DISH") has a valid and pending agreement with Plaintiff. Nor do they contest Plaintiff's allegation that DISH is failing to meet its commitments under that agreement. Defendants make no offer to ameliorate that ongoing harm by offering to fulfill obligations under the agreement during the pendency of their requested stay. Considering that ongoing harm, Defendants' requested stay would significantly prejudice Plaintiff.

Nor have Defendants shown that they will suffer hardship and inequity if this matter is not stayed. Courts in this District have long held that "ordinary burdens associated with litigating a case do not constitute undue burden" that weigh in favor of a stay. *Baldwin v. United States*, No. 11-cv-02033, 2011 WL 5177698, at *2 (D. Colo. Nov. 1, 2011); *Harris v. Startek USA, Inc.*, No. 22-cv-00437, 2022 WL 2068990, at *3 (D. Colo. May 11, 2022) (same). Attempting to circumvent

that common maxim, Defendants broadly assert that a stay is warranted to avoid inconsistent rulings and potentially duplicative discovery. To start, all of Defendants' arguments are predicated on their faulty assumption that the JPML will grant transfer and consolidation. But the actions subject to the pending JPML motion are based on different contracts (each unique), entered into with different counterparties providing DISH with different services and goods, and will involve unique factual and legal analyses.

Those same points reinforce why a stay is inappropriate even if the JPML ultimately grants the motion. Each action will require *contract*- and *relationship*- specific rulings and will require *contract*- and *party*- specific discovery. Defendants ignore that fact entirely in their motion. Nor have Defendants explained why there is an undue hardship or inequity for them at this particular juncture given the current schedule.

Finally, for many of the same reasons, a stay would not conserve judicial resources here. "[C]ases that linger on the Court's docket are more difficult to manage," *Certain Underwriters at Lloyds, London v. Hartford Accident & Indem. Co.*, No. 18-cv-01896, 2021 WL 5810712, at *5 (D. Colo. Dec. 6, 2021), and that is why "stays—and the delay that comes with them—are usually not convenient," *McGinn v. El Paso Cnty.*, 640 F. Supp. 3d 1070, 1076 (D. Colo. 2022).

Here, proceeding with the current case schedule will promote the orderly consideration and handling of this case, without unnecessarily straining court resources, including in the most likely scenario: denial of Defendants' motion by the JPML. Defendants will file their responsive pleading on April 13. If Defendants file an Answer, the case will simply be in discovery with initial disclosures due May 12 pending the JPML's ruling, likely to occur in June. Even if Defendants file a motion to dismiss, the motion would not be fully briefed until May 18 at the

earliest, or Plaintiff may choose to amend. Thus, any burden on the Court would likely be non-existent or, at very most, minimal.

Plaintiff respectfully requests that Defendants' motion to stay this action be denied.

## BACKGROUND

### I. DEFENDANTS SEEK TO EVADE DISH'S OBLIGATIONS

This case arises out of a Master Service Agreement ("MSA") entered into between Plaintiff and Defendant DISH on April 30, 2021. Dkt. No. 1, ¶ 2. Under the terms of the MSA, Plaintiff agreed to provide fiber connections to DISH's cell sites in return for fees. *Id.* These fiber connections—also known as cell backhaul services—enable the transmission of voice and data traffic between cell sites and network hubs. *Id.* [redacted]

[redacted]

[redacted] Plaintiff has been meeting its side of the bargain: Since 2021, DISH has ordered and Plaintiff has provisioned fiber connections to nearly 2,400 sites. *Id.* ¶ 31.

In the latter half of 2025, Defendant EchoStar, which acquired DISH's parent company in 2023,[1] sold certain of its spectrum licenses that enable wireless communications between cell sites and customers' mobile devices. *Id.* ¶¶ 3, 38. Between August and November 2025, EchoStar entered into three spectrum sale agreements, one with AT&T and two with SpaceX—worth a combined $42 billion. *Id.* ¶ 39. EchoStar then announced a transition to a business model under which customers will receive mobile wireless services primarily through network infrastructure and spectrum obtained from other wireless carriers. *Id.*

Following announcement of these highly lucrative deals, EchoStar directed DISH to claim its contractual commitments to Plaintiff were excused. *Id.* ¶¶ 39-40. On September 25, 2025, despite [redacted], DISH sent Plaintiff a letter asserting its contractual obligations were excused due to force majeure and frustration of purpose, along with termination notices for several hundred service locations. *Id.* ¶¶ 42-45. Plaintiff contested DISH's assertions in two separate letters sent in October and December 2025. *Id.* ¶¶ 49-51. For months, DISH did not respond to Comcast's letters and instead continued to send termination notices for hundreds more

[1] DISH's parent company became a wholly owned subsidiary of EchoStar. *Id.* ¶ 4.

locations—and when DISH finally did respond in January 2026, it merely echoed the baseless assertions made in its initial letter. *Id.* ¶ 52.

## II. PROCEDURAL BACKGROUND

Plaintiff filed this suit on February 27, 2026. Dkt. No. 1. Defendants filed their motion for transfer of actions (excluding this one) on March 2, 2026. Mot. for Transfer of Actions, *In re: DISH Wireless L.L.C. Commc'n Towers Cont. Litig.*, No. 3182 (J.P.M.L. 2026), Dkt. No. 1. They subsequently filed a notice of related action with the JPML, notifying it of this case on March 20, 2026. *Id.*, Dkt. No. 27. The JPML hearing will likely occur on May 28, 2026.

On March 20, Defendants filed this stay motion. Dkt. No. 25. As in their transfer motion, Defendants argue that the pending eight actions "rest on the same fundamental factual questions." *Id.* at 3. However, each action involves *different* contracts with unique terms, plaintiffs, services/goods, and claims.[2]

## ARGUMENT

"[S]tays of the normal proceedings of a court matter should be the exception rather than the rule, and courts in this District generally disfavor stays." *Barrington v. United Airlines, Inc.*, 565 F. Supp. 3d 1213, 1216 (D. Colo. 2021).

When assessing requests to stay, courts consider "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation." *Carolus v. Gen. Elec. Co.*, No. 07-cv-00714, 2007 WL 4225802, at *1 (D. Colo. Nov. 28, 2007); *see also Four Winds*

[2] Defendants assert that two of the pending cases have been stayed but fail to mention that plaintiffs in those cases *consented* to stays. *Id.* at 4.

*Interactive LLC v. 22 Miles, Inc.*, No. 16-cv-00704, 2017 WL 121624, at *2 (D. Colo. Jan. 11, 2017) (listing an additional two factors when stay of discovery is sought: the "interests of nonparties in either staying or proceeding with discovery" and "the public interest in either staying or proceeding with discovery"). All factors weigh decisively against a stay here.

## I. DEFENDANTS FACE A DIFFICULT BURDEN

As noted, "[t]he party seeking a stay generally faces a difficult burden." *Green*, 697 F. Supp. 3d at 1177; *see also Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). Defendants attempt (at 5-6) to invert that maxim, arguing that stays are generally granted where a transfer motion is pending before the JPML.

But a closer look at Defendants' cases reveals no such uniform approach. Three of Defendants' cases do not involve JPML proceedings at all. *See Masciotra v. Vertafore, Inc.*, No. 20-cv-03603, 2021 WL 3887949, at *1 (D. Colo. Feb. 3, 2021) (pending motion to transfer under first-filed rule to state where plaintiff resided and was injured); *Stone v. Vail Resorts Dev. Co.*, No. 09-cv-02081, 2010 WL 148278, at *1 (D. Colo. Jan. 7, 2010) (pending motion to compel arbitration where arbitration agreement barred class actions and limited discovery); *Ratcliff v. Brown*, No. 23-cv-00605, 2023 WL 6314566, at *5 (D. Colo. Sept. 28, 2023) (pending motion to dismiss raising immunity defenses). Of the remaining cases that actually involve a motion to stay predicated on JPML proceedings, four were unopposed requests.[3]

The remaining cases cited by Defendants are inapplicable for a core reason (in addition to

[3] *See Lundy v. C.B. Fleet Co.*, Inc., No. 09-cv-00802, 2009 WL 1965521, at *1 (D. Colo. July 6, 2009); *Cheney v. Eli Lily & Co.*, No. 14-cv-02249, 2014 WL 7010656, at *1 (D. Colo. Dec. 9, 2014); *Sykes v. LivaNova Deutschland GmbH*, No. 17-cv-02437, 2018 WL 286791, at *1 (D. Colo. Jan. 4, 2018); *Adams v. Bristol-Meyers Squibb Co.*, No. 16-cv-01674, 2016 WL 4257595, at *1 (D. Colo. July 18, 2016).

others): In all of them, the alleged harm to plaintiff underlying the complaint had *already* occurred. Thus, to the extent the party opposing the stay identified any potential prejudice (many did not), prejudice was limited to the impact of a stay on discovery.[4] By contrast, here, Plaintiff *continues* to suffer harm each day that DISH shirks its obligations under the MSA. *See infra* at 8-10.

And numerous courts, including this one, have fully or partially denied requests for stays in cases where a transfer motion is pending before the JPML. *See, e.g.*, *Carolus*, 2007 WL 4225802, at *2 (partially denying motion to stay to allow certain discovery to proceed); *Zornes v. Smitty's Supply, Inc.*, No. 19-cv-2257, 2020 WL 1285386, at *1-3 (D. Kan. Mar. 18, 2020) (denying stay motion where JPML briefing was ongoing because it was not certain whether Panel would ultimately transfer cases); *Blackmore v. Smitty's Supply, Inc.*, 451 F. Supp. 3d 1003, 1004 (N.D. Iowa 2020); *Garrison v. Stephan*, No. 23-cv-01138, 2023 WL 5207624, at *2 (D. Nev. Aug. 11, 2023). Defendants thus face an uphill climb in demonstrating that a stay is appropriate in this case.

## II. DEFENDANTS HAVE NOT MET THEIR DIFFICULT BURDEN TO SHOW A STAY IS WARRANTED

All factors weigh against a stay of the proceeding.

### A. A Stay Would Prejudice Plaintiff

Defendants' request to stay this action in its entirety would unduly prejudice Plaintiff

[4] *Bunnell Bunnell v. Future Motion, Inc.*, No. 22-cv-01220, 2023 WL 7279354, at *1 (D. Colo. Nov. 3, 2023) (products liability); *Council v. Target Corp.*, No. 13-cv-03479, 2014 WL 859326, at *2 (D. Colo. Mar. 5, 2014) (data breach); *Fontenot v. NCAA*, No. 23-cv-03076, 2024 WL 6990724, at *1 (D. Colo. Feb. 21, 2024) (antitrust violations); *Deutsche Bank Tr. Co. Am. v. Fushimi*, No. 11-cv-02472, 2011 WL 5864987, at *3 (D. Colo. Nov. 22, 2011) (past fraudulent conveyance); *FDIC v. Countrywide Fin. Corp.*, No. 11-cv-02268, 2011 WL 4372915, at *3 (D. Colo. Sept. 19, 2011) (recovery of lost funds).

because the underlying harm to Plaintiff is ongoing, and any stay would delay individualized discovery and case development.

While Defendants argue that Plaintiff will not face prejudice from a delay of discovery, Dkt. No. 25 at 6-7, that argument ignores the nature of this action (in addition to being incorrect on substance). Plaintiff seeks a declaratory judgment because DISH is engaged in an *ongoing and escalating* failure to comply with requirements under the MSA. Dkt. No. 1, ¶¶ 53-69. A declaratory judgment is a form of prospective relief meant to remedy continuous or future injuries. *E.g.*, *Hooper v. City of Tulsa*, 71 F.4th 1270, 1277 (10th Cir. 2023); *Cuesta v. SMT Holdings LLC*, No. 21-cv-03094, 2022 WL 15516990, at *5 (D. Colo. Oct. 27, 2022). Indeed, the very purpose of the Declaratory Judgment Act is "to provide an immediate forum for the adjudication of rights and obligations in actual controversy where such controversy may be settled in its entirety and *with expediency and economy*." *Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir. 1963) (emphasis added).

That is why Plaintiff seeks declaratory relief: DISH's breach is continuous in nature, with damages increasing each time DISH cancels additional circuits or withholds payment to Plaintiff. Dkt. No. 1, ¶ 69. Because Plaintiff's harms compound each day that this case remains unresolved, delaying further proceedings would directly and materially prejudice Plaintiff. This weighs heavily against a stay. *See Jozwiak v. Stryker Corp.*, No. 09-cv-1985, 2010 WL 147143, at *2 (M.D. Fla. Jan. 11, 2010) (denying motion to stay proceedings pending JPML decision considering the potential prejudice to the non-moving parties); *see also Bos. Taxi Owners Ass'n, Inc. v. City of Bos.*, 187 F. Supp. 3d 339, 342 (D. Mass. 2016) (stay pending appeal was inappropriate where a stay "could cause further injury to plaintiffs").

Defendants also make no offer to ameliorate those harms by, for example, representing that DISH will begin complying with the terms of the MSA while the action is stayed. Given that Defendants have failed to offer any proposal to offset harm from the delay in resolving this suit, Defendants have failed to carry their heavy burden to show that Plaintiff would not be prejudiced by the stay. *Jozwiak*, 2010 WL 147143, at *3 (concluding potential prejudice to non-movants did not support a stay where movants merely "speculated" that the prejudice would be ameliorated by a quick decision from the JPML).

Defendants' cited cases are inapposite. All but one dealt with past harms—not ongoing ones. *See supra* at 6-7. And in the one case cited by Defendants that involved allegations of *ongoing* harm, *Ratcliff*, the court came to the exact opposite conclusion on this factor than the one urged by Defendants. 2023 WL 6314566, at *3. In *Ratcliff*, a pro se, incarcerated plaintiff alleged that defendants "deprived him of certain rights and treated him unfairly." *Id.* The court noted that it was "persuaded that a stay could compound the harm Plaintiff alleges to have suffered" and found "the first factor weighs in Plaintiff's favor and *against* a stay." *Id.*[5]

Defendants also disregard that, unlike in their cited cases, a stay would delay individualized discovery and thus individual case development here. Defendants' argument is premised largely on *putative class action* cases. *See Masciotra*, 2021 WL 3887949, at *1; *Stone*, 2010 WL 148278, at *2; *Council*, 2014 WL 859326, at *1; *Fontenot*, 2024 WL 6990724, at *1. In those cases, any delayed discovery was not individualized and would have minimal impact on individual case

[5] The court ultimately concluded a stay was warranted to resolve motions to dismiss based on claims of immunity to suit. *Ratcliff*, 2023 WL 6314566, at *3-4.

strategy and development.[6] *E.g.*, *Stone*, 2010 WL 148278, at *2. Here, however, Plaintiff's suit is brought on its own behalf and is focused on the MSA between Comcast and DISH and on EchoStar's interference with that relationship and agreement. Dkt. No. 1, ¶¶ 53-77. A stay here means that Plaintiff will be deprived of party-specific discovery concerning the MSA and its use for case development, and will then have to pursue such discovery later regardless of whether the JPML grants Defendants' motion. That needless delay likewise prejudices Plaintiff.

### B. Defendants Have Not Shown They Will Face Hardship Or Inequity

Defendants do not identify any hardship or inequity that would outweigh that prejudice. While Defendants argue they will face hardship in the form of "a significant risk of inconsistent rulings on substantive and discovery motions, as well as substantial duplication of effort," Dkt. No. 25 at 8, that assertion is flawed in multiple respects.

First, as noted above, Defendants rely heavily on cases involving putative class actions—where discovery is, by definition, centered around a core set of facts, overlapping, and duplicative. *See supra* at 9-10. By contrast, this case involves two individual claims: one concerning the terms of the MSA between Plaintiff and DISH—an agreement to which no other plaintiff in any of the other actions is a party—and the second concerning the conduct of EchoStar vis-à-vis the MSA between Plaintiff and DISH. Dkt. No. 1, ¶¶ 53-77. To the extent Defendants hypothesize that some discovery might be duplicative of another action in the future, their speculation is insufficient to show a burden worthy of staying Plaintiff's case.

Moreover, because this case is in its early stages, any purported hardship to Defendants is

---

[6] *Bunnell* is similar: although not a putative class action, it was one of 28 federal and 100 state product liability suits regarding the same product. *See* 2023 WL 7279354, at *1.

*de minimis*. The parties have not conducted a Rule 26(f) conference, which is a prerequisite to seeking discovery. D.C.COLO.LCivR 26.[7] Defendants' discovery-related obligations at this point are limited to conducting a Rule 26(f) conference, preparing a Joint Rule 26(f) Report, and exchanging initial disclosures. Simply "[c]onducting a Rule 26 conference would cause minimal prejudice . . . even if this case is later consolidated, because Rule 26 merely requires the parties to disclose information concerning the claims or defenses that is reasonably available." *Jozwiak*, 2010 WL 147143, at *3. Defendants' claimed prejudice from these non-burdensome requirements does not support a stay. *Id.* (concluding that the moving parties' hardship did not support a stay where the "case has just begun to develop"); *Garrison*, 2023 WL 5207624, at *2 (denying stay due to lack of "hardship" where case was at "early stage").

Second, Defendants assert that they will have to engage in the duplicative efforts of responding to the Complaint (which will occur before briefing concludes on the stay motion) and that courts could reach "inconsistent decisions on substantially similar legal questions." Dkt. No. 25 at 9. But responding to a complaint is nothing more than an "ordinary burden[] associated with litigating a case" and "do[es] not constitute [an] undue burden" that would weigh in favor of a stay. *Baldwin*, 2011 WL 5177698, at *2; *Simental v. State Auto. Mut. Ins. Co.*, No. 21-cv-01725, 2021 WL 4947285, at *3 (D. Colo. Aug. 18, 2021); *Certain Underwriters*, 2021 WL 5810712, at *4 (collecting cases).

In any event, Defendants' asserted fear of duplicative effort and inconsistent rulings rests on a fundamental misrepresentation of the nature of this action and others before the JPML. Each

[7] The deadline for a Rule 26(f) conference is not until April 28, 2026.

action involves different plaintiffs, different contracts with unique terms, different claims (some breach of contract, others declaratory judgments, and others tortious interference), different governing state laws, and the provision of different services to DISH, varying from a $3,700 monthly rental agreement for land, to the purchase of equipment, to the leasing of cell tower space, to the provision of cell backhaul service.[8] While each plaintiff alleges DISH failed to keep its side of the bargain, it remains the case that each "bargain" is unique, requiring analysis of entirely different contracts that are neither standard nor uniform. Moreover, EchoStar is a defendant only in this case and one other action. Dkt. No. 1; *Aircomm*, Dkt. No. 39. As a result, the suits raise fundamentally different factual and legal questions.

Defendants ignore all of this, asserting the actions will involve a series of questions regarding Defendants' conduct. Dkt. No. 25 at 3-4. Although not spelled out, Defendants seem to contend that defenses of force majeure, impossibility, and frustration of purpose create a significant enough throughline to find that they will be harmed without a stay. But again, Defendants gloss over that the terms of the specific contracts and the circumstances surrounding *each* contract will govern those analyses. Under New York law, which governs the MSA, whether an event constitutes a force majeure event depends on if "the force majeure *clause specifically includes* the event that actually prevents a party's performance." *Kel Kim Corp. v. Cent. Markets,*

[8] *See* Dkt. No. 1; *Am. Towers LLC v. DISH Wireless, L.L.C.*, No. 25-cv-03311 (D. Colo. Oct. 20, 2026), Dkt. No. 1; *Aircomm of Avon, LLC v. DISH Wireless L.L.C.*, No. 25-cv-03756 (D. Colo. Jan. 30, 2026), Dkt. No. 39; *DataVerge LLC v. DISH Wireless L.L.C.*, No. 26-cv-01168 (E.D.N.Y. Feb. 27, 2026), Dkt. No. 1; *Royal Grp. Plaza, LLC v. DISH Wireless L.L.C.*, No. 26-cv-01092 (C.D. Cal. Feb. 3, 2026), Dkt. No. 1; S*abre Indus, Inc. v. DISH Wireless Leasing L.L.C.*, No. 26-cv-00209 (S.D.N.Y. Jan. 12, 2026), Dkt. No. 4; *Seidner Props., LP v. DISH Wireless L.L.C.*, No. 26-cv-00082 (C.D. Cal. Jan. 9, 2026), Dkt. No. 1.

*Inc.*, 70 N.Y.2d 900, 902-03 (1987) (emphasis added). That inquiry thus will vary by contract.

Any defense of impossibility or frustration of purpose will present similarly individualized issues. An impossibility defense is established "only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible" *and* it was "produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Id.* Similarly, frustration of purpose applies only when "a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract." *PPF Safeguard, LLC v. BCR Safeguard Holding, LLC*, 85 A.D.3d 506, 508 (2011). Those inquiries will depend on the individual substance of each contract (which runs the gamut from land to equipment to cell tower space to backhaul), and what DISH could have anticipated at the time it entered into the various contracts (with effective dates spanning 2020 to 2025), among other individualized assessments.

As a result, any risk of duplicate efforts and inconsistent rulings is minimal and certainly does not outweigh the prejudice of a stay to Plaintiff.

### C. Defendants Have Not Demonstrated A Stay Will Conserve Judicial Resources

For many of the above reasons, a stay also would not preserve judicial resources. Defendants focus on the judicial efficiency that *could* result *if* the case is consolidated before the JPML. But the notion that such consolidation provides efficiencies in the abstract "rings hollow" because "there is no guarantee that" Defendants' motion to consolidate will be granted. *Linde v. Envision Healthcare Corp.*, No. 20-cv-2661, 2022 WL 1154625, at *3 (D. Kan. Apr. 19, 2022) (denying stay pending JPML ruling). Indeed, because the actions Defendants seek to consolidate call for differing factual and legal inquiries, the JPML will likely deny Defendants' motion.

Courts in this District also routinely conclude that stays do not preserve judicial resources where, as here, a stay would only delay resolution of the case and thus would keep the case on the Court's docket longer than needed. "[C]ases that linger on the Court's docket are more difficult to manage," *Certain Underwriters*, 2021 WL 5810712, at *5, and that is why "stays—and the delay that comes with them—are usually not convenient," *McGinn*, 640 F. Supp. 3d at 1076. Indeed, "entry of a stay may cause significant delay of the resolution of this matter, which in turn makes the Court's docket less predictable and less manageable." *Certain Underwriters*, 2021 WL 5810712, at *5; *United States for Daro Tech, Ltd. v. Centerre Gov't Contracting Grp*., *LLC*, No. 13-cv-01811, 2014 WL 1215565, at *12 (D. Colo. March 24, 2014). Maintaining the current schedule ensures that the case does not languish while the JPML motion is pending (and harm steadily accrues to Plaintiff)—all for a motion that, for the reasons discussed, is likely to fail. *See Zornes*, 2020 WL 1285386, at *2 (denying stay where plaintiff "present[ed] reasonable bases upon which the JPML could deny transfer" and, even if JPML granted motion, the stay would mean "progress made in th[e] case would be halted, to the detriment of judicial economy").

And even if consolidation ultimately were to occur, a stay prior to that consolidation would not materially conserve judicial resources. Defendants will file their responsive pleading on April 13. If Defendants file an Answer, the parties will simply proceed with discovery, with initial disclosures set for exchange on May 12. Even if Defendants file a motion to dismiss, it would not be fully briefed until May 18 at the earliest, or Plaintiff may amend its Complaint. Either way, the impact on this Court's judicial resources will be minimal prior to the JPML's ruling on Defendants' consolidation motion, likely to occur in June.

### D. To The Extent Relevant, Other Factors Do Not Support A Stay

To the extent the remaining discovery-related factors are relevant, they weigh against a stay. *Supra* at 9-10. Although the interest of non-parties is neutral, the public interest supports denial.

The interest of non-parties in this dispute regarding a contract between Plaintiff and DISH does not support a stay. Defendants speculate that the FCC may have "an interest in participating in third-party discovery in one consolidated litigation." Dkt. No. 25 at 11. But Defendants jump multiple steps ahead in their effort to make this factor something other than neutral. Defendants do not identify *any* discovery requests that have been made to the FCC. Instead, they try to point to discovery sought from *Defendants* by a different plaintiff regarding their "communications with the FCC." *Id.* Defendants' argument thus is nothing more than pure conjecture. Because there is no "specific nonparty interests that would be affected, the fourth factor neither weighs in favor of nor against granting a stay." *Myers v. City of Loveland*, No. 12-cv-02317, 2012 WL 5364219, at *2 (D. Colo. Oct. 31, 2012).

The public interest, meanwhile, weighs firmly against a stay. There is "a strong interest held by the public in general regarding the prompt and efficient handling of all litigation." *Wells v. Dish Network, LLC*, No. 11-cv-00269, 2011 WL 2516390, at *2 (D. Colo. June 22, 2011). This interest is all the more compelling where "the stay is tied to a resolution of a motion for which ultimate success is not guaranteed." *Id.* That is the case here.

## CONCLUSION

Plaintiff respectfully requests that the motion to stay be denied.

Dated: April 3, 2026

Respectfully submitted,

By: */s/ Matthew A. Brill*

Matthew A. Brill
Matthew T. Murchison
Jason R. Burt
Andrew S. Bridgewater
matthew.brill@lw.com
matthew.murchison@lw.com
jason.burt@lw.com
andrew.bridgewater@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: 202-637-2200
Fax: 202-637-2201

Chloé L. Nurik
chloe.nurik@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-906-1200
Fax: 212-751-4864

*Attorneys for Plaintiff Comcast Business Communications, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 3, 2026, I electronically filed the foregoing document **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS (Dkt. No. 25, 03/20/26)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

**Hugh Q. Gottschalk**
gottschalk@wtotrial.com

**Jacob A. Rey**
rey@wtotrial.com

**Abigail L. Thompson**
athompson@wtotrial.com

**Glenn M. Kurtz**
gkurtz@whitecase.com

**Joshua D. Weedman**
jweedman@whitecase.com

**Robert E. Tiedemann**
rtiedemann@whitecase.com

**Camille M. Shepherd**
camille.shepherd@whitecase.com

*/s/ Matthew A. Brill*
Matthew A. Brill