## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:26-cv-00824-SKC-STV

Comcast Business Communications, LLC,

   Plaintiff,

v.

DISH Wireless L.L.C. and EchoStar Corporation,

   Defendants.

---

## DEFENDANT'S ANSWER TO
## PLAINTIFF'S COMPLAINT AND JURY DEMAND

---

Defendant DISH Wireless L.L.C. ("Defendant" or "DISH Wireless"), by and through its undersigned attorneys, submits this Answer ("Answer") to the Complaint, ECF No. 1 ("Complaint") by Comcast Business Communications, LLC ("Plaintiff" or "Comcast"). Unless otherwise stated, capitalized terms herein have the same meaning as in the Complaint. To the extent Defendant uses terms in this Answer defined in the Complaint, that use is not an acknowledgment or admission of any characterization Plaintiff may have ascribed to such defined terms.

No response is required to the various headings, subheadings, and footnotes throughout the Complaint. To the extent that responses are required to such headings, subheadings and footnotes, they are denied. To the extent that any allegation is not specifically admitted, it is denied.

To avoid any doubt, Defendant denies each and every allegation in the Complaint except as specifically admitted herein. Throughout the Complaint, Plaintiff has cited press releases, public statements, and public filings as purported evidentiary support for their factual allegations. In referring to these documents in response to specific allegations, Defendant does not concede that Plaintiff has accurately described the documents and does not admit the accuracy of any statements contained in those documents.

Defendant reserves the right to challenge the relevance and admissibility of the allegations and all sources and documents referred to or purportedly quoted in the Complaint. Defendant further reserves the right to amend and/or supplement this Answer.

Subject to the foregoing, as and for its answer to the Complaint, Defendant answers as follows:

## INTRODUCTION

1. Defendant denies the allegations in Paragraph 1, except admits that in April 2021, Defendant and Comcast entered into a Master Services Agreement ("MSA"), attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

2. Defendant denies the allegations in Paragraph 2, except admits that (i) on July 26, 2019, DISH Network Corporation ("DNC") publicly announced that it

1

would enter the U.S. wireless market as the fourth nationwide facilities-based network competitor after reaching agreements with the Antitrust Division of the U.S. Department of Justice, T-Mobile US, Inc., and Sprint Corporation to acquire a number of spectrum licenses across several bands, and made public commitments to the Federal Communications Commission (the "FCC") regarding network buildout, and (ii) in April 2021, Defendant and Comcast entered into the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document. Defendant further admits that Comcast has provided Defendant 2,400 fiber connections for cell backhaul service under the MSA.

3.     Defendant denies the allegations in Paragraph 3, except admits that (i) on July 26, 2019, DNC publicly announced that it would enter the U.S. wireless market as the fourth nationwide facilities-based network competitor, and made public commitments to the FCC regarding network buildout, (ii) prior to 2023, DNC was Defendant's ultimate parent company, and (iii) DNC held certain FCC spectrum licenses across various frequency bands.

4.     Defendant denies the allegations in Paragraph 4, except admits that (i) on August 8, 2023, DNC announced a merger transaction with EchoStar Corporation ("EchoStar"), and that the merger closed on December 31, 2023, making DNC a wholly-owned subsidiary of EchoStar, (ii) following the merger transaction with EchoStar, the FCC approved the pro forma transfer of control to EchoStar of certain

2

licenses held by DNC and its subsidiaries, (iii) EchoStar made public commitments to the FCC regarding network buildout, and (iv) Charles Ergen is the Chairman of the Board of EchoStar and DNC.

5.      Defendant denies the allegations in Paragraph 5, except admits that (i) DNC and EchoStar made public commitments to the FCC regarding network buildout, and (ii) the FCC granted EchoStar certain extensions regarding network buildout.

6.      Defendant denies the allegations in Paragraph 6, except admits that (i) on May 9, 2025, FCC Chairman Brendan Carr wrote to EchoStar's Chairman Charles Ergen, (ii) EchoStar and Defendant took all reasonable efforts to respond to the FCC's inquiries and retain the spectrum licenses at issue, (iii) on June 6, 2025, EchoStar filed reply comments in FCC Dockets Nos. 25-173 and 22-212, (iv) the FCC's conduct in requiring EchoStar to divest or forfeit the spectrum at issue was unforeseeable, unprecedented and beyond the control of EchoStar or Defendant, (v) the unprecedented and unforeseeable actions by the FCC were unrelated to any of EchoStar's or Defendant's obligations to the FCC, and (vi) Plaintiff purports to characterize and quote excerpts from public filings, and Defendant refers to those public filings for their full contents, but denies any characterization thereof that is inconsistent with those public filings.

7.      Defendant denies the allegations in Paragraph 7, except admits that (i) as a result of the unprecedented and unforeseeable actions by the FCC, EchoStar and

certain of EchoStar's subsidiaries that own the spectrum licenses at issue (which do not include DISH Wireless) (collectively, "EchoStar Group") were forced to negotiate the sale of certain spectrum licenses to AT&T, which sale was announced on August 26, 2025 (the "AT&T Transaction"), and the sale of certain spectrum licenses and MSS Authorizations to SpaceX, which sales were announced on September 8, 2025 and November 6, 2025 (collectively, the "SpaceX Transaction," and together with the AT&T Transaction, the "Transactions"), (ii) the unprecedented and unforeseeable actions by the FCC were unrelated to any of EchoStar Group's or Defendant's obligations to the FCC, (iii) the Transactions are subject to certain closing conditions, including regulatory approval, (iv) closing of the AT&T Transaction is expected in 2026, subject to certain conditions, including regulatory approval, and (v) closing of the SpaceX Transaction is expected in 2027, subject to certain conditions, including regulatory approval.

8.    Defendant denies the allegations in Paragraph 8, except admits that (i) EchoStar publicly disclosed that on September 8, 2025 FCC Chairman Brendan Carr sent a follow-up letter to Mr. Ergen, stating that the FCC Chairman had directed the staff of the FCC to terminate the agency's investigation of EchoStar as set forth in the FCC's May 9, 2025 letter, and (ii) Plaintiff purports to quote and characterize excerpts from a public filing, and Defendant refers to that public filing for its full contents, but denies any characterization thereof that is inconsistent with that public filing.

4

9. Defendant denies the allegations in Paragraph 9, except admits that (i) in July 2020, DNC acquired certain assets and liabilities associated with Boost Mobile from T-Mobile US, Inc., following T-Mobile US, Inc.'s merger with Sprint Corporation, (ii) Boost Mobile is a wireless carrier that offers prepaid and postpaid mobile phone plans, (iii) following the FCC's unprecedented and unforeseeable conduct with respect to the spectrum at issue, Boost Mobile could no longer operate as a mobile network operator ("MNO") and was forced to transition to a hybrid MNO business model under which primary connectivity will be provided by wireless providers other than DISH Wireless, and (iv) Plaintiff purports to characterize excerpts from a public statement, and Defendant refers to that public statement for its full contents, but denies any characterization thereof that is inconsistent with that public statement.

10. Defendant denies the allegations in Paragraph 10, except admits that as a result of the FCC's unprecedented and unforeseeable actions, EchoStar was forced to enter into the Transactions.

11. Defendant denies the allegations in Paragraph 11, including footnote 5 thereto, except admits that (i) on September 25, 2025, Defendant sent Plaintiff a notice under the MSA, attached to the Complaint as Exhibit B (the "September 2025 Letter"), and Plaintiff purports to quote and characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document. Defendant further admits that certain

5

entities that were providing infrastructure services related to the network buildout have sued Defendant in connection with the FCC's unprecedented and unforeseeable actions.

12.     Paragraph 12 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 12, except admits that Plaintiff purports to quote and characterize the MSA and the September 2025 Letter, attached to the Complaint as Exhibits A and B, and Defendant refers to those documents for their full contents, but denies any characterization thereof that is inconsistent with those documents.

13.     Defendant denies the allegations in Paragraph 13, except admits that Plaintiff purports to quote and characterize the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.  Defendant further states that Defendant's performance under the MSA, including any requirement to pay Plaintiff, has been excused as a result of certain unprecedented and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

14.     Paragraph 14 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 14, except states that Defendant's performance under the MSA, including any requirement to pay Plaintiff, has been excused as a result of

certain unprecedented and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

## PARTIES

15.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies them.

16.     Defendant admits the allegations in Paragraph 16.

17.     Defendant admits the allegations in Paragraph 17.

## JURISDICTION AND VENUE

18.     Paragraph 18 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant does not contest that this Court has jurisdiction over this action.

19.     Paragraph 19 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant does not contest that this Court may exercise personal jurisdiction over Defendant.

20.     Paragraph 20 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant does not contest that venue in this Court is proper.

## FACTUAL ALLEGATIONS

### A.     DISH Entered the Mobile Wireless Market in 2019 and Made Aggressive 5G Buildout Commitments.

21.     Defendant denies the allegations in Paragraph 21, except admits that on July 26, 2019, DNC publicly announced that it would enter the U.S. wireless

7

market as the fourth nationwide facilities-based network competitor, and made public commitments to the FCC regarding network buildout.

22.    Defendant denies the allegations in Paragraph 22, except admits that (i) in July 2020, DNC acquired certain assets and liabilities associated with Boost Mobile from T-Mobile US, Inc., following T-Mobile US, Inc.'s merger with Sprint Corporation, (ii) Boost Mobile is a wireless carrier that offers prepaid and postpaid mobile phone plans, (iii) following the FCC's unprecedented and unforeseeable conduct with respect to the spectrum at issue, Boost Mobile could no longer operate as an MNO and was forced to transition to a hybrid MNO business model under which primary connectivity will be provided by wireless providers other than DISH Wireless, (iv) DNC made public commitments to the FCC regarding network buildout, and (v) Plaintiff purports to characterize and quote excerpts from the public statement referenced therein, and Defendant refers to that public statement for its full contents, but denies any characterization thereof that is inconsistent with that public statement.

**B.    DISH and Comcast Signed the MSA in 2021**

23.    Defendant denies the allegations in Paragraph 23, except admits that (i) DISH Wireless required access to and leased physical infrastructure to operate its wireless network, and (ii) Defendant entered into agreements with certain service providers to operate its wireless network.

8

24.     Defendant denies the allegations in Paragraph 24, except admits that in April 2021, Defendant and Plaintiff entered into the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

25.     Defendant denies the allegations in Paragraph 25, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

26.     Defendant denies the allegations in Paragraph 26, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

27.     Defendant denies the allegations in Paragraph 27, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

28.     Defendant denies the allegations in Paragraph 28, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

29.    Defendant denies the allegations in Paragraph 29, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

30.    Defendant denies the allegations in Paragraph 30, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

31.    Defendant admits the allegations in Paragraph 31.

**C.    DISH's Parent Companies Experienced Challenges in Meeting FCC Buildout Obligations but Consistently Asserted They Were in Compliance**

32.    Defendant denies the allegations in Paragraph 32, except admits that (i) on August 8, 2023, DNC announced a merger transaction with EchoStar, and that the merger closed on December 31, 2023, making DNC and Defendant wholly-owned subsidiaries of EchoStar, and (ii) the unprecedented and unforeseeable actions by the FCC were unrelated to any of EchoStar Group's or Defendant's obligations to the FCC.

33.    Defendant denies the allegations in Paragraph 33, except admits that (i) DNC made public commitments to the FCC regarding network buildout, and (ii) Plaintiff purports to characterize excerpts from public filings referenced therein, and

Defendant refers to those public filings for their full contents, but denies any characterization thereof that is inconsistent with those public filings.

34. Defendant denies the allegations in Paragraph 34, except admits that (i) on August 8, 2023, DNC announced a merger transaction with EchoStar, and that the merger closed on December 31, 2023, making DNC a wholly-owned subsidiary of EchoStar, (ii) Charles Ergen is the Chairman of the Board of EchoStar and DNC, and (iii) Plaintiff purports to characterize and quote excerpts from the article referenced therein, and Defendant refers to that article for its full contents, but denies any characterization thereof that is inconsistent with that article.

35. Defendant denies the allegations in Paragraph 35, except admits that (i) in September 2024, EchoStar submitted a request to the FCC for an extension of the construction milestones associated with certain of its network buildout commitments, (ii) the FCC granted that request, and (iii) Plaintiff purports to characterize the request, and Defendant refers to that request for its full contents, but denies any characterization thereof that is inconsistent with that request.

**D.    The FCC Launched an Investigation into EchoStar's Compliance with Its Regulatory Obligations**

36. Defendant denies the allegations in Paragraph 36, except admits that (i) on May 9, 2025, FCC Chairman Brendan Carr wrote to EchoStar's Chairman Charles Ergen, and (ii) Plaintiff purports to characterize and quote excerpts from the May 9, 2025 letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

11

37.    Defendant denies the allegations in Paragraph 37, except admits that (i) the FCC's conduct in requiring EchoStar to divest or forfeit the spectrum at issue was unforeseeable, unprecedented and beyond the control of EchoStar Group or Defendant, (ii) the unprecedented and unforeseeable actions by the FCC were unrelated to any of EchoStar Group's or Defendant's obligations to the FCC, (iii) EchoStar Group and Defendant took all reasonable efforts to respond to the FCC's inquiries and retain the spectrum licenses at issue, (iv) on June 6, 2025, EchoStar filed reply comments in FCC Dockets Nos. 25-173 and 22-212 and refers to that public filing for its full contents, but denies any characterization thereof that is inconsistent with that public filing, and (v) Plaintiff purports to characterize and quote excerpts from public filings and statements referenced therein, and Defendant refers to those documents for their full contents, but denies any characterization thereof that is inconsistent with those documents.

E.    **Far from Being Forced by the FCC, EchoStar Voluntarily Sold Spectrum Licenses in Highly Lucrative Transactions**

38.    Defendant denies the allegations in Paragraph 38, except admits that as a result of the unprecedented and unforeseeable actions by the FCC, EchoStar Group was forced to enter into the Transactions.

39.    Defendant denies the allegations in Paragraph 39, except admits that (i) as a result of the unprecedented and unforeseeable actions by the FCC, EchoStar Group was forced to enter into the Transactions, (ii) Boost Mobile is transitioning to a hybrid MNO business model under which primary connectivity will be provided by

wireless providers other than DISH Wireless, and (iii) Plaintiff purports to characterize excerpts from public statements referenced therein, and Defendant refers to those public statements for their full contents, but denies any characterization thereof that is inconsistent with those public statements.

**F.    At EchoStar's Direction, DISH Erroneously Claimed Its Contractual Obligations Were Excused**

40.    Defendant denies the allegations in Paragraph 40, except admits that as a result of the unprecedented and unforeseeable actions by the FCC, EchoStar Group was forced to enter into the Transactions.  Defendant further states that Defendant's performance under the MSA, including any requirement to pay Plaintiff, has been excused as a result of certain unprecedented and unforeseeable actions of the FCC requiring EchoStar Group to either sell or forfeit the spectrum at issue.

41.    Defendant denies the allegations in Paragraph 41, except admits that Plaintiff purports to quote and characterize excerpts from the public statement made by EchoStar's chairman, and Defendant refers to that public statement for its full contents, but denies any characterization thereof that is inconsistent with the public statement.

42.    Defendant denies the allegations in Paragraph 42, including footnote 17 thereto, except admits that (i) Defendant sent the September 2025 Letter to Comcast, attached to the Complaint as Exhibit B, and Plaintiff purports to quote and characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document, and

13

(ii) certain counterparties, including providers of cell tower facilities, equipment, and fiber infrastructure, such as Comcast, have filed actions related to the FCC's unprecedented and unforeseeable actions, and Defendant denies all allegations as set forth in its responsive pleadings to those actions.  Defendant further states that Defendant's performance under the MSA, including any requirement to pay Plaintiff, has been excused as a result of certain unprecedented and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

43.    Defendant denies the allegations in Paragraph 43, except admits that on September 25, 2025, Defendant sent termination notices for 901 service locations, and refers to those notices for their full contents, but denies any characterization thereof that is inconsistent with those documents.

44.    Defendant denies the allegations in Paragraph 44, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

45.    Paragraph 45 contains legal arguments or conclusions to which no response is required.  To the extent a response is required Defendant denies the allegations in Paragraph 45, except admits that (i) as a result of the unprecedented and unforeseeable actions by the FCC, EchoStar Group was forced to enter into the Transactions, (ii) Plaintiff purports to characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full

contents, but denies any characterization thereof that is inconsistent with that document, (iii) the unprecedented and unforeseeable actions of the FCC were unrelated to any of EchoStar Group's or Defendant's obligations to the FCC, and (iv) Plaintiff purports to characterize the public statement referenced therein, and Defendant refers to that public statement for its full contents, but denies any characterization thereof that is inconsistent with that public statement.

46. Paragraph 46 contains legal arguments or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 46, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

47. Defendant denies the allegations in Paragraph 47, except admits that (i) Plaintiff purports to quote and characterize a public filing and refers to that public filing for its full contents, but denies any characterization thereof that is inconsistent with that public filing, and (ii) Plaintiff purports to characterize the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

48. Defendant denies the allegations in Paragraph 48, except admits that (i) Plaintiff purports to characterize and quote excerpts from the public statements

15

referenced therein, and Defendant refers to those statements for their full contents, but denies any characterization thereof that is inconsistent with those statements, (ii) Defendant sent the September 2025 Letter to Comcast, attached to the Complaint as Exhibit B, and (iii) Plaintiff purports to quote and characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.  Defendant further states that its performance under the MSA, including any requirement to pay Plaintiff, has been excused as a result of certain unprecedented and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

### G.    Comcast Categorically Rejected DISH's Arguments

49.    Defendant denies the allegations in Paragraph 49, except admits that (i) on October 28, 2025 Comcast sent a letter to Defendant, attached to the Complaint as Exhibit C, and (ii) Plaintiff purports to quote and characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

50.    Defendant denies the allegations in Paragraph 50, except admits that between October 28, 2025 and December 11, 2025, Defendant sent termination notices for 314 additional service locations, and refers to those notices for their full contents, but denies any characterization thereof that is inconsistent with those documents.

16

51.     Defendant denies the allegations in Paragraph 51 including footnote 20 thereto, except admits that (i) on December 12, 2025 Comcast sent a letter to Defendant, attached to the Complaint as Exhibit D, (ii) Plaintiff purports to quote and characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document, and (iii) on December 12, 2025, Defendant sent termination notices for 27 additional service locations, and refers to those notices for their full contents, but denies any characterization thereof that is inconsistent with those documents.

52.     Defendant denies the allegations in Paragraph 52, except admits that (i) on January 14, 2026, Defendant sent a letter to Comcast, attached to the Complaint as Exhibit E, and (ii) Plaintiff purports to quote and characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT THAT DISH IS NOT EXCUSED FROM ITS**
**CONTRACTUAL OBLIGATIONS UNDER THE MSA)**

53.     Defendant incorporates by reference herein its responses to the preceding paragraphs of the Complaint.

54.     Defendant admits the allegations in Paragraph 54.

55.     Paragraph 55 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 55.

17

56.     Paragraph 56 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 56.

57.     Defendant admits the allegations in Paragraph 57.

58.     Defendant denies the allegations in Paragraph 58, except admits that (i) Defendant sent the September 2025 Letter to Comcast, attached to the Complaint as Exhibit B, and (ii) Plaintiff purports to quote and characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

59.     Paragraph 59 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 59, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

60.     Defendant denies the allegations in Paragraph 60, except admits that Plaintiff purports to quote and characterize excerpts of the MSA, attached to the Complaint as Exhibit A, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document. Defendant further states that its performance under the MSA, including any requirement to pay Plaintiff, has been excused as a result of certain unprecedented

and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

61.     Paragraph 61 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 61.

62.     Defendant denies the allegations in Paragraph 62, except admits that as a result of the FCC's unprecedented and unforeseeable actions, EchoStar Group was forced to enter into the Transactions.  Defendant further states that its performance under the MSA, including any requirement to pay Plaintiff, has been excused as a result of certain unprecedented and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

63.     Defendant denies the allegations in Paragraph 63, except admits that (i) on October 28, 2025 Comcast sent a letter to Defendant, attached to the Complaint as Exhibit C, and (ii) Plaintiff purports to characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

64.     Defendant denies the allegations in Paragraph 64, except admits that (i) on December 12, 2025 Comcast sent a letter to Defendant, attached to the Complaint as Exhibit D, and (ii) Plaintiff purports to characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

65.    Defendant denies the allegations in Paragraph 65, except admits that (i) on January 14, 2026, Defendant sent a letter to Comcast, attached to the Complaint as Exhibit E, and (ii) Plaintiff purports to characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with that document.

66.    Paragraph 66 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 66.

67.    Paragraph 67 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 67.  Defendant further states that Defendant's performance under the MSA, including any requirement to pay Plaintiff, has been excused as a result of certain unprecedented and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

68.    Paragraph 68 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 68.

69.    Paragraph 69 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 69.  Defendant further states that Defendant's performance under the MSA, including any requirement to pay Plaintiff, has been excused as a

result of certain unprecedented and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

## SECOND CLAIM FOR RELIEF
## (TORTIOUS INTERFERENCE WITH THE MSA AGAINST ECHOSTAR)

70. Defendant incorporates by reference herein its responses to the preceding paragraphs of the Complaint.

71. Defendant admits the allegations in Paragraph 71.

72. Paragraph 72 contains legal arguments or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 72.

73. Paragraph 73 contains legal arguments or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 73.

74. Defendant denies the allegations in Paragraph 74, except admits that EchoStar was not a party to the MSA.

75. Paragraph 75 contains legal arguments or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 75.

76. Paragraph 76 contains legal arguments or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 76. Defendant further states that Defendant's performance under the MSA, including any requirement to pay Plaintiff, has been excused as a

21

result of certain unprecedented and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

77.     Defendant denies the allegations in Paragraph 77.  Defendant further states that Defendant's performance under the MSA, including any requirement to pay Plaintiff, has been excused as a result of certain unprecedented and unforeseeable actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue.

### PRAYER FOR RELIEF

78.     No response is required to Plaintiff's prayer for relief.  To the extent a response is required, Defendant denies that Plaintiff is entitled to any relief.

### JURY DEMAND

Defendant demands a trial by jury of all issues so triable under Federal Rules of Civil Procedure 38.

### GENERAL DENIALS

Except as otherwise expressly admitted in Paragraphs 1 through 78, Defendant denies each and every allegation contained in Paragraphs 1 through 78 of the Complaint, including, without limitation, the headings, subheadings, subparts, and footnotes contained therein, and specifically denies liability to Plaintiff, or that Plaintiff suffered any legally cognizable damages for which Defendant is responsible. Defendant expressly reserves the right to amend and/or supplement its Answer.

With respect to the Paragraphs in the Complaint in which Plaintiff prays for damages or other relief, Defendant denies that Plaintiff is so entitled under the law.

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative and other defenses.  In asserting these defenses, Defendant does not assume the burden with respect to any issue as to which applicable law places the burden on Plaintiff.  Defendant reserves the right to supplement, amend, or delete any or all of the following defenses, as warranted by discovery or other investigation, or as justice may require.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claim is barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted.  The MSA does not require Defendant to continue making payments once services have become unusable as a direct result of the unprecedented and unforeseeable regulatory actions by the FCC requiring EchoStar to either sell or forfeit the spectrum at issue, which were unrelated to any of EchoStar's or Defendant's obligations to the FCC and which compelled the involuntary sale and loss of the necessary spectrum licenses essential to Defendant's wireless network operations.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claim is barred, in whole or in part, because the FCC's actions and the resulting forced sale and loss of the relevant spectrum licenses made it impossible and/or commercially impracticable for Defendant to perform its obligations under the

23

MSA. The forced sale and loss of those licenses resulted from unforeseeable and unprecedented governmental action outside Defendant's control and unrelated to any of EchoStar's or Defendant's obligations to the FCC, and not due to any act or omission by Defendant. Accordingly, Defendant's performance is excused under the doctrines of impossibility and/or impracticability.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claim is barred, in whole or in part, because the unforeseeable and unprecedented actions of the FCC requiring EchoStar to either sell or forfeit the spectrum at issue, and the resulting forced sale of spectrum licenses, constitute a force majeure event under the MSA. These government actions were unforeseeable and unprecedented, beyond Defendant's control, and unrelated to any of EchoStar's or Defendant's obligations to the FCC. The FCC's actions directly prevented performance under the MSA, and Defendant provided timely notice of the force majeure event.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred, in whole or in part, because the principal purpose of the MSA—enabling DISH to operate a nationwide wireless network using specific spectrum licenses—has been frustrated by the unprecedented and unforeseeable regulatory actions by the FCC requiring EchoStar to either sell or forfeit the spectrum at issue, which were unrelated to any of EchoStar's or Defendant's obligations to the FCC and which compelled the involuntary sale and loss of the spectrum licenses.

24

These government actions were unforeseeable, unprecedented, and beyond Defendant's control, and the non-occurrence of these government actions was a basic assumption on which the MSA was made, thereby excusing or discharging Defendant's obligations under the MSA, in whole or in part.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claim is barred, in whole or in part, because the consideration for the MSA—access to services for the operation of a wireless network using specific spectrum licenses—has failed as a direct and unforeseeable result of the unforeseeable and unprecedented actions by the FCC requiring EchoStar to either sell or forfeit the spectrum at issue, which were unrelated to any of EchoStar's or Defendant's obligations to the FCC, and the resulting involuntary sale and loss of those licenses. As such, any obligation to continue performance under the MSA is discharged.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claim is barred, in whole or in part, because Plaintiff did not take reasonable steps to prevent, reduce, and/or mitigate any damage, harm or injury.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claim is barred or subject to setoff and/or recoupment to the extent Defendant is entitled to credits, offsets, or other remedies under the MSA, including but not limited to installation credits, service outage credits, or other amounts due to Defendant under the MSA.

25

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claim for certain categories of damages is barred or limited by the limitation of liability provisions in the MSA.

WHEREFORE, Defendant respectfully requests that the Court enter judgment:

A.    In favor of Defendant and against Plaintiff;

B.    Denying all claims for relief asserted by Plaintiff;

C.    Awarding Defendant costs, including attorneys' fees; and

D.    Granting such other and further relief as the Court may deem just and proper.

Dated:   April 13, 2026                          Respectfully submitted,


*/s/Glenn M. Kurtz*

Hugh Q. Gottschalk
Jacob A. Rey
Abigail L. Thompson
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: gottschalk@wtotrial.com
         rey@wtotrial.com
         athompson@wtotrial.com

Glenn M. Kurtz
Joshua D. Weedman
Robert E. Tiedemann
Camille M. Shepherd
WHITE & CASE LLP
1221 Avenue of the Americas
New York, N.Y. 10020-1095
Telephone: 212.819.8200
Email: gkurtz@whitecase.com
         jweedman@whitecase.com
         rtiedemann@whitecase.com
         camille.shepherd@whitecase.com

*Counsel to Defendant DISH Wireless
L.L.C.*

27

## CERTIFICATE OF SERVICE ECF

I HEREBY CERTIFY that on April 13, 2026, I electronically filed the foregoing

Defendant Dish Wireless L.L.C.'s Answer to the Complaint with the Clerk of Court

using the ECF system which will serve notice on all counsel of record in this case.


*/s/ Glenn M. Kurtz*
Glenn M. Kurtz